CITY OF CINCINNATI, APPELLANT, *v.* COY ET AL., APPELLEES.
(Two cases.)

(No. 9098 and 9099—Decided May 21, 1962.)

*Mr. James W. Farrell, Jr.,* city solicitor, for appellant.
*Mr. Allen Brown, Mr. Richard R. Siegel* and *Mr. Stewart E. Fletcher,* for appellees.

KEEFE, J. These are appeals on questions of law from the Cincinnati Municipal Court, Hamilton County, Ohio. Defendants below were arrested by members of the Cincinnati Police Department. One was charged with exhibiting for sale obscene literature and the other with selling obscene literature, in the form of a book entitled "The Tropic of Cancer."

Defendants filed demurrers to the affidavits, which the trial court sustained, and the defendants were discharged. The demurrers attack the constitutionality of the ordinance under which defendants are charged.

The ordinance involved is Section 901-02a of the Code of Ordinances of the City of Cincinnati, entitled "Obscene Publications," which reads:

"Whoever shall, with knowledge—either actual or construc-. tive—of the content thereof, disseminate, sell, offer for sale, give away, exhibit, publish, or have in his possession or under his control with the intent to sell, give away, publish, or otherwise disseminate or distribute any obscene book, pamphlet, paper, picture, drawing, or representation that is obscene, shall be fined not more than one thousand ($1,000) dollars, or imprisoned not more than one (1) year, or both."

Disapproval of obscenity in publications, as that concept ultimately has been construed by the United States Supreme Court and the Ohio Supreme Court, has been consistently manifested by this court and its members. However, these appeals have nothing to do with the obscenity of "The Tropic of Cancer." Whether to the average person, applying contemporary moral and decency standards of this community, "The Tropic of Cancer" is obscene is not before us here.

These appeals present one principal question, namely, is the "obscene publications" ordinance of Cincinnati, quoted, above, constitutional?

Before answering that, we can dispose quickly of a subsidiary question said to be raised here: Can the city appeal from an order of the Municipal Court in a criminal case sustaining a demurrer to an affidavit and discharging the defendant prior to trial? It can. *City of Toledo* v. *Kohlhofer*, 96 Ohio App., 355; *State* v. *Blair*, 24 Ohio App., 413; *State* v. *Gossler*, 74 Ohio App., 486.

The first claim of unconstitutionality of the ordinance raised by the defendants is that, by including the term, "constructive," it runs headlong into the pronouncements of the United States Supreme Court in *Smith* v. *People of California*, 361 U. S., 147, decided December 14, 1959. Defendants object also to the use of the word, "constructive," because they maintain that the word as used in the ordinance is vague, and persons who might come within the operation of the ordinance might not know what it is their duty to avoid.

So far as we are concerned here, *Smith* stands for the legal proposition that a bookseller must have some knowledge of the books he sells. The United States Supreme Court in *Smith* failed to state exactly and definitely what the court comprehended by its use of the term, "knowledge." There is certain-

ly vagueness about what the Supreme Court intended to encompass by its use of that term. In his concurring opinion, Justice Frankfurter refers, as follows, to this lack of definitiveness: "How much or how little awareness that a book may be found to be obscene suffices to establish scienter, or what kind of evidence may satisfy the how much or the how little, the court leaves for another day."

However, regardless of the indefinite nature of the United States Supreme Court's scienter concept in *Smith*, it is believed that the concept is sufficiently broad for the language of the ordinance here to come easily within it. Even though the ordinance uses the word, "constructive," as well as "actual" in referring to knowledge of the contents of a book, we think the term, "constructive," fits comfortably under the knowledge tent spread by the court in *Smith*. The idea of constructive knowledge is no stranger to the law, and it seems reasonable that a bookseller could properly be held to have constructive knowledge of his merchandise. It is believed that the scienter, which *Smith* makes an indispensable requirement of ordinance or law, can well be minimal, that is, only what is reasonable under all circumstances. Along this line, the writer of the majority opinion in *Smith* says: "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necssary element in proving his awareness of its contents."

The *Smith* opinions (that of the court and the concurring ones) make repeated reference to knowledge of the contents of a book. It certainly seems reasonable that the guilty knowledge which the United States Supreme Court would hold would support a conviction for sale or offering for sale of an obscene book could be constructive. For example, the writer of this opinion has seen, in his experiences as a judge of the Cincinnati Municipal Court, books ultimately determined by juries to be obscene. From their obscene and smutty covers and their vile and morbid titles, a reasonable and average bookseller could well be held to have constructive knowledge of their contents without reading the entire book. Admittedly, all covers and titles of books do not convey to the general beholder the nature of their contents; and whether the subject book here does would become a matter of proof on trial.

Defendants contend that the ordinance is unconstitutional

under the rule of *City of Cleveland* v. *Betts*, 168 Ohio St., 386. Its syllabus reads:

"Section 3, Article XVIII of the Constitution of Ohio, authorizes municipalities to adopt and enforce within their limits only such local police regulations as are not in conflict with general laws, and a municipal ordinance which makes the carrying of concealed weapons a misdemeanor is in conflict with a general statutory enactment making the identical offense a felony and is invalid."

Defendants say the city ordinance here attempts to make a misdemeanor out of the same offense which is made a felony by the state statute (Section 2905.34, Revised Code). The city says that the ordinance does not violate the *Betts* rule; that the element of scienter in the statute is different from that in the ordinance.

So far as is pertinent here, the ordinance reads as follows:

"Whoever shall, with knowledge—either actual or constructive— of the content thereof, * * * sell, offer for sale * * * any obscene book * * * shall be fined * * *."

So far as is pertinent, the statute reads:

"No person shall knowingly sell * * * or offer to sell * * * an obscene * * * book * * *."

The city makes an interesting argument in attempting to differentiate between these legislative enactments, but we feel that any reasonable rule of interpretation makes it mandatory to find that they are both concerned with an identical offense. It is true that the ordinance refers to the content of a book and the statute omits the word, "content," and makes reference to the entire book. However, the Ohio Supreme Court in *State* v. *Jacobellis*, 173 Ohio St., 22, to which the city refers in its brief and argument, says this in construing the state statute:

"* * * It is specifically required under Section 2905.34, Revised Code, that the acts punished thereunder shall be done knowingly. The act requires knowledge. The question, of course, is knowledge of what. It is apparent that such knowledge must necessarily relate to knowledge of the obscenity of the *contents* of the publication involved." (Emphasis added.)

When the ordinance and the statute as construed by the Ohio Supreme Court are examined side by side, the identity of the offense with which they are concerned seems inescapable.

It can be seen that the Ohio Supreme Court in construing the statute mentions the "contents" of a book in talking about scienter, and Cincinnati's ordinance uses the word, "content," of a book. Certainly, for all reasonable and practical purposes, these two enactments cover the same thing. No amount of semantic reflection can develop any real or consequential difference between the two enactments. If there is a substantial distinction, it has eluded us.

In its brief, the city argues in part: "It is obvious from the terms of the present Cincinnati ordinance that the scienter, made a part of the offense defined therein, is knowledge of the content of the publication. The scienter that is an element of the crime defined by Revised Code Section 2905.34 is knowledge of the character of the content of the publication."

In response to that, it can be said that in *Smith*, the justices writing the official court opinion and the concurring opinions used the term "contents" and the words "character of the books" interchangeably. Justice Brennan said, in referring to the ordinance before the court in *Smith*:

"* * * and we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the *character of the books* they sold." (Emphasis added.)

The rule of the Ohio Supreme Court in *Betts* binds this court. Under the circumstances, the judgment must be that the ordinance here contravenes the state statute which has general application throughout the state, and the ordinance must give way.

This determination notwithstanding, the Cincinnati Police Department is free to prosecute traffickers in obscene literature under the state statute which has been upheld by the Ohio Supreme Court as constitutional.

The judgment of the Municipal Court sustaining the demurrers is affirmed.

*Judgment affirmed.*

Long, P. J., and Hildebrant, J., concur.